UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ashwant Singh, et al., | No. 2:24-cv-00223-KJM-DB |
| Plaintiffs, | ORDER |
| v. | |
| Batteries Plus, L.L.C., et al., | |
| Defendants. | |

In this dispute arising out of a franchise agreement, defendants move to compel arbitration and to dismiss the action or stay the case pending arbitration. For the reasons below, the court **grants** the motion.

I.  BACKGROUND

Plaintiff Ashwant Singh is the owner and operator of plaintiff Clean Future Technologies, LLC. Ashwant Decl. at 2, ECF No. 9-6.[1] Defendant Batteries Plus, LLC, a Wisconsin limited liability company, owns a national franchise that operates and franchises over 600 retail stores under the "Batteries Plus" trademark. Daher Decl. ¶ 3, ECF No. 8-8; *see* Franchise Agreement at 4, Pls.' Ex. 1, ECF No. 9-1. Batteries Plus retail stores sell batteries, light bulbs and other related items and also offer device repair and other related services. Daher Decl. ¶ 3. At all relevant

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

1

times, defendants Victor Daher and Jason Edward Moss were respectively the Vice President of Franchise Development, *id.* ¶ 1, and Director of Real Estate and Acquisitions for Batteries Plus, *id.* ¶ 4.

On January 31, 2022, Singh received a copy of Batteries Plus's 2021 Franchise Disclosure Document (FDD). Singh Decl. ¶ 3; FDD Email, Pls.' Ex. 2, ECF No. 9-2; 2021 FDD, Pls.' Ex. 3.[2] The FDD included information regarding purchasing a franchise and summarized relevant information, including certain provisions of the Franchise Agreement. *See generally* 2021 FDD. Singh declares no one explained the 2021 FDD contained a copy of the Franchise Agreement, which started on page 155 of the FDD. Singh Decl. ¶ 5; *see* 2021 Agreement Copy, 2021 FDD Ex. C. In the email containing the 2021 FDD, a Batteries Plus representative explains the FDD "is an important document that provides you with information about our company, the franchise that we offer, and our franchise system." FDD Email. The email explains that to provide prospective franchisees "sufficient opportunity to fully review the FDD and perform [] due diligence about [the] company and the franchise offer, the law imposes a required minimum waiting period between" the time when a prospective franchisee receives the FDD and when the prospective franchisee may first execute a franchise agreement or pay Batteries Plus any money. *Id.* The Federal Trade Commission requires a fourteen-day waiting period. *See* 16 C.F.R. § 436.2(a); *see* 2021 FDD Receipt, 2021 FDD Ex. H.

The 2021 FDD summarizes certain provisions of the Franchise Agreement and advises potential franchisees to consult an advisor and to read the document and "all accompanying agreements carefully." 2021 FDD at ii.[3] On page v, the 2021 FDD notes in bold "**Special Risks to Consider About *This* Franchise**" and includes the following provision:

> **Out-of-State Dispute Resolution.** The franchise agreement requires you to resolve disputes with the franchisor by mediation,

---

[2] Plaintiffs lodged with the court the signed 2021 FDD, Pls.' Ex. 3, and 2022 FDD, Pls.' Ex. 5, in USB format because the .pdf documents were protected. *See* Notice of Lodging, ECF No. 10. Defendants have filed an unsigned copy of the 2022 FDD on the docket. *See* Unsigned 2022 FDD, Doutt Decl. Ex. D, ECF No. 8-5.

[3] For the 2021 FDD and 2022 FDD, the court cites to the page numbers identified on the bottom of each document page.

> arbitration, and/or litigation only in Wisconsin.  Out-of-state
> mediation, arbitration, or litigation may force you to accept a less
> favorable settlement for disputes.  It may also cost you more to
> mediate, arbitrate, or litigate with the franchisor in Wisconsin than
> in your own state.

*Id.* at v (emphasis in original).  The 2021 FDD includes a table of contents, which lists "RENEWAL, TERMINATION, TRANSFER AND DISPUTE RESOLUTION" as Item 17, and includes a list of attached exhibits, including the Franchise Agreement.  *Id.* at viii (emphasis in original).  Item 17, in turn, includes a table of "certain important provisions of the franchise and related agreement."  *Id.* at 39 (emphasis omitted).  Within Item 17, provision "u," "Dispute resolution by arbitration or mediation," reads: "Except for actions we bring for monies owed, injunctive or extraordinary relief, or actions involving real estate, all disputes first will be subject to non-binding mediation at our headquarters in Hartland, Wisconsin, then (if not resolved) to binding arbitration in Milwaukee, Wisconsin."  *Id.* at 42.  Provision "w" describes the choice of law provision, which states the Franchise Agreement will apply the law in which the franchisee's store is located.  *Id.*  Exhibit C of the 2021 FDD includes a copy of a Franchise Agreement.  2021 Agreement Copy.  The copy includes a table of contents, listing Section 19: "DISPUTE RESOLUTION."  *Id.* at i.  Section 19, which starts on page 30 of the agreement, includes both a provision about mediation and a separate provision about arbitration.  *Id.* at 30–31.

On April 18, 2022, prior to signing any agreement, Singh made a wire transfer of $9,900 to Batteries Plus as part of the first installment of the franchise fee.  Singh Decl. ¶ 6; *see* Initial Payment, Pls.' Ex. 4, ECF No. 9-3.  A week later on April 25, 2022, Batteries Plus sent Singh the 2022 FDD without explaining why it was sending Singh a second FDD.  Singh Decl. ¶ 7; 2022 FDD.  The relevant parts of the 2022 FDD are identical to the 2021 FDD and include disclosures regarding the arbitration clause and a copy of the Franchise Agreement.  *Compare* 2022 FDD *with* 2021 FDD.  Singh signed and dated an acknowledgement of receipt of both FDDs.  *See* 2021 FDD Receipt; 2022 FDD Receipt, 2022 FDD Ex. H.  The receipts acknowledge receipt of the FDDs and exhibits including a copy of the Franchise Agreement.  *See* 2021 FDD Receipt; 2022 FDD Receipt.

Then on May 10, 2022, a Batteries Plus representative sent a copy of the Franchise Agreement to Singh for his signature. Singh Decl. ¶ 8. Defendant Daher, who as noted above was the Vice President of Franchise Development for Batteries Plus at all relevant times, Daher Decl. ¶ 1, sent Singh a text message instructing him to "click through and complete if you can tonight and submit the fees that we've agreed upon by tomorrow," Singh Decl. ¶ 9; Text Message, Pls.' Ex. 6, ECF No. 9-4. Based on this text message, Singh declares "it was my understanding that I needed to quickly complete all the paperwork within one day to secure my franchise." Singh Decl. ¶ 10. Both the franchisor, Batteries Plus, and the franchisee, Singh, signed the agreement the same day. *See* Franchise Agreement at 2, 37. The agreement provides, in relevant part, as follows: "This Agreement is binding upon the parties and their respective executors, administrators, heirs, assigns, and successors in interest, and . . . [e]xcept as provided above, this Agreement is not intended, and will not be deemed, to confer any rights or remedies upon any person or legal entity not a party to this Agreement." *Id.* at 35.

The Franchise Agreement Singh signed included a blank table of contents. *Id.* at 3. Like the copies of the franchise agreement attached to the 2021 and 2022 FDDs, Section 19 covered "DISPUTE RESOLUTION." *Id.* at 33 (emphasis in original). Section 19(A) includes a provision regarding mediation. *Id.* Section 19(B) includes an arbitration provision, which provides in relevant part:

> Arbitration. Except to the extent Franchisor elects to enforce the provisions of this Agreement by injunction as provided in Section l9(C) below, all disputes, claims and controversies between the parties arising under or in connection with this Agreement or the making, performance or interpretation thereof (including claims of fraud in the inducement and other claims of fraud in the arbitrability of any matter) that have not been settled by or are not otherwise subject to mediation . . . will be resolved by arbitration on an individual basis under the authority of the Federal Arbitration Act in Milwaukee, Wisconsin. Any arbitration proceeding may not be consolidated with any other arbitration proceeding, and Franchisee agrees not to seek joinder of any of its claims with those of any other party. The arbitrator(s) shall have no authority to select a different hearing locale for the arbitration. The arbitrator(s) will have a minimum of five (5) years' experience in franchising or distribution law and will have the right to award specific performance of this

> Agreement. The proceedings will be conducted under the Commercial Arbitration Rules of the American Arbitration Association, or the rules of such other arbitration services organization as the parties otherwise may agree upon in writing, to the extent such rules are not inconsistent with the provisions of this arbitration provision or the Federal Arbitration Act. The decision of the arbitrator(s) will be final and binding on all parties; provided, however, the arbitrator(s) may not under any circumstances: (i) stay the effectiveness of any pending termination of this Agreement; (ii) assess punitive or exemplary damages; or (iii) make any award which extends, modifies or suspends any lawful term of this Agreement or any reasonable standard of business performance set by Franchisor . . . .

*Id.* at 33–34. Section 19(C) in turn provides in relevant part:

> [I]f Franchisee breaches or threatens to breach any of the terms of this Agreement, Franchisor will be entitled to an injunction restraining such breach and/or a decree of specific performance, without showing or proving any actual damage, together with recovery of reasonable attorneys' fees and other costs incurred in obtaining such equitable relief, until such time as a final and binding determination is made by the arbitrators.

*Id.* at 34.

The Franchise Agreement includes a choice of law provision and provides the agreement "will be governed by and construed under the laws of the state in which the Store is located, without regard to any conflict of laws principles of such state." *Id.* at 34. The provision also states, "Franchisee waives, to the fullest extent permitted by law, the rights and protections that might be provided through any state franchise or business opportunity laws, other than those of the state in which the Store is located." *Id.* at 34–35. Finally, the agreement includes a punitive damages waiver provision in which both the franchisor and franchisee agree to waive "TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO OR A CLAIM FOR ANY PUNITIVE OR EXEMPLARY DAMAGES AGAINST THE OTHER AND AGREE THAT IN THE EVENT OF ANY DISPUTE BETWEEN THEM, EACH WILL BE LIMITED TO THE RECOVERY OF ACTUAL DAMAGES SUSTAINED BY IT." *Id.* at 35 (emphasis in original). These provisions were included in the copies of the franchise agreement attached as exhibits to

both the 2021 and the 2022 FDD. *See* 2021 Agreement Copy; 2022 Agreement Copy, 2022 FDD Ex. C.

Singh was not represented by counsel at the time he signed the Franchise Agreement, and he declares he "did not have any opportunity to negotiate any of the provisions," including the arbitration provision. Singh Decl. ¶ 11. He further declares the Franchise Agreement "was presented as 'take it or leave it'" and his understanding was if he did not sign it, he would be unable to purchase a franchise. *Id.* Singh also declares the Franchise Agreement he signed did not include a Table of Contents, he was unaware of the arbitration provision, which was included in the 57-page Franchise Agreement, and no one explained the legal or practical effects of the provision. *Id.* ¶¶ 12–13. At no point did Singh contest the dispute resolution terms of the Franchise Agreement. Daher Decl. ¶ 5; Opp'n at 9, ECF No. 9 (conceding "[p]laintiff did not expressly contest the Arbitration Provision prior to signing the Franchise Agreement").

On September 27, 2022, Singh assigned his rights under the Franchise Agreement to Clean Future, his company. Assignment Agreement, Doutt Decl. Ex. B, ECF No. 8-3; *see* Compl. ¶ 6, ECF No. 1-1. After Singh signed the Franchise Agreement, plaintiffs allege they discovered defendants grossly understated the costs of operating a new franchise, Compl. ¶¶ 52–56, provided plaintiffs with inflated and false projected revenue figures, *id.* ¶¶ 57–68, permitted another franchisee to solicit and service customers in plaintiffs' protected area, *id.* ¶¶ 69–75, and failed to provide support and created a hostile work environment, *id.* ¶¶ 76–78. In December, 2023,[4] the parties attended an unsuccessful mediation. Doutt Decl. ¶ 8; Obj. to Demand for Arb. The parties do not identify where the mediation was held. Plaintiffs then filed suit in California state court for violation of several California state laws. *See generally* Compl. Defendants filed a demand for arbitration, Doutt Decl. ¶ 9, and then removed the state case to federal court based on this court's diversity jurisdiction, *see* Notice of Removal, ECF No. 1. Plaintiffs have filed their

---

[4] While Doutt declares the parties attended an unsuccessful mediation on December 11, 2023, Doutt Decl. ¶ 8, ECF No. 8-1, plaintiffs' objection to defendants' demand for arbitration before the American Arbitration Association notes the parties attended an in-person mediation on December 9, 2023, Obj. to Demand for Arb. ¶¶ 8–9, Doutt Decl. Ex. F, ECF No. 8-7; *see also* Opp'n at 7 (stating parties attended in-person mediation on December 9, 2023), 9 (stating parties attended mediation on December 11, 2023).

1  objections to the arbitration demand before the American Arbitration Association.  Doutt Decl.
2  ¶ 9; Obj. to Demand for Arb.

3        Defendants move to compel arbitration under the Federal Arbitration Act (FAA) and to
4  dismiss or stay these proceedings pending arbitration.  Mot., ECF No. 8.  Plaintiffs oppose on
5  multiple grounds.  Opp'n.  They argue there is no valid agreement to arbitrate, the arbitration
6  provision is unconscionable, and even if the arbitration provision is enforceable, it does not
7  extend to the claims against defendants Daher and Moss.  *See generally id.*  Defendants have
8  replied.  Reply, ECF No. 12.  The court held a hearing on this matter on March 8, 2024.  *See*
9  Mins. Mot. Hr'g, ECF No. 14.  Elena Sandell appeared for plaintiffs.  *Id.*  Michael Gray appeared
10 for defendants.  *Id.*  Since hearing, plaintiffs have filed a surreply as the court permitted.
11 Surreply, ECF No. 15.

12 **II.    LEGAL STANDARD**

13       "The FAA reflects the fundamental principle that arbitration is a matter of contract."
14 *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  The FAA provides arbitration
15 agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law
16 or in equity for the revocation of any contract[.]"  9 U.S.C. § 2.  "By its terms, the Act leaves no
17 place for the exercise of discretion by a district court, but instead mandates that district courts
18 *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has
19 been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in
20 original) (citing 9 U.S.C. §§ 3, 4).  However, as with any other contract, an arbitration agreement
21 "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or
22 unconscionability.'"  *Rent-A-Ctr.*, 561 U.S. at 68 (quoting *Dr.'s Assocs., Inc. v. Casarotto*,
23 517 U.S. 681, 687 (1996)).  Additionally, because "[t]he right to compel arbitration stems from a
24 contractual right[,] . . . [a]n entity that is neither a party to nor agent for nor beneficiary of the
25 contract lacks standing to compel arbitration[.]"  *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744
26 (9th Cir. 1993).

27       "A party seeking to compel arbitration has the burden under the FAA to show
28 (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement

to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (citation omitted). "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, it is undisputed California state law applies. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also* Franchise Agreement at 34 (choice of law provision); Mot. at 15; Opp'n at 10.

### III.    ANALYSIS

#### A.    Daher and Moss's Contractual Standing to Compel Arbitration

Before the court considers whether there is a valid agreement to arbitrate, the court considers first whether defendants Daher and Moss have contractual standing to compel arbitration. Plaintiffs argue that even if the arbitration provision is enforceable, it does not extend to Daher and Moss, who are not signatories to the Franchise Agreement on behalf of Batteries Plus. Opp'n at 17. Defendants argue the arbitration provision is applicable to Daher and Moss under the equitable estoppel and agency theory. Mot. at 18; Reply at 11. In their opposition, plaintiffs do not address defendants' agency theory. *See* Opp'n at 17–19.

Because arbitration is a contractual right, only parties to an arbitration agreement generally have standing to exercise their right to compel arbitration. *See Britton*, 4 F.3d at 744. However, a non-signatory agent for a party to the agreement may have standing to compel arbitration. *See id.* For example, California courts have held non-signatories who "were acting as agents" for a signatory "are entitled to the benefit of the arbitration provisions." *Dryer v. L.A. Rams*, 40 Cal. 3d 406, 418 (1985) (citing *Berman v. Dean Witter & Co.*, 44 Cal. App. 3d 999, 1004 (Ct. App. 1975)).

Plaintiffs allege Daher and Moss are respectively the Vice President of Franchise Development of Batteries Plus and Real Estate Project Manager of Batteries Plus, Compl. ¶¶ 23–24, and their alleged wrongdoings occurred while they were acting within the scope of their employment, *see, e.g., id.* ¶¶ 110–30. Because they are agents of Batteries Plus and their alleged misconduct relates to and are connected to the Franchise Agreement, Daher and Moss are entitled

8

to the benefits of the arbitration provision and to compel compliance with it. *See, e.g.*, *Nguyen v. Tran*, 157 Cal. App. 4th 1032, 1037 (2007) (collecting cases); *Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc.*, No. 13-1409, 2013 WL 6844270, at *8 (E.D. Cal. Dec. 26, 2013), *aff'd sub nom. Clean Tech Partners, LLC v. Elec. Recyclers Int'l, Inc.*, 627 F. App'x 621 (9th Cir. 2015) (same); *cf. Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986) ("[N]onsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles.").

Because defendants have contractual standing to move to compel under the agency theory, the court declines to consider whether equitable estoppel applies. The court now considers whether the parties agreed to delegate the question of arbitrability to the arbitrator.

**B.     Delegation**

In deciding whether to compel arbitration, a court must determine the two "gateway" issues identified above: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). These issues, however, "can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide otherwise.'" *Id.* (emphasis in original) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

Defendants, for the first time during hearing, argued there is a delegation clause in the Franchise Agreement. This argument is waived and the court need not consider it. *See Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012). The court nonetheless granted plaintiffs an opportunity to file a surreply to address the issues of delegation, whether defendants have waived the issue, and severability. Plaintiffs have submitted a surreply addressing the issues of delegation and severability as to the limitation of damages. *See* Surreply. Plaintiffs do not argue defendants waived their delegation argument, and because they have now had an opportunity to fully address defendants' arguments, the court considers the delegation question on the merits.

The parties do not expressly delegate the question of arbitrability to the arbitrator. At hearing, defendants relied on the Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), and the Northern District of California's decision in *Saperstein v. Thomas P. Gohagan & Company*, 476 F. Supp. 3d 965 (N.D. Cal. 2020), to argue there is a delegation clause here. In both of these other cases, the arbitration agreements expressly provided the arbitrator "shall have exclusive authority" to resolve disputes relating to the agreement, "including, but not limited to any claim that all or any part of th[e] Agreement is void or voidable." *Rent-A-Ctr.*, 561 U.S. at 68; *Saperstein*, 476 F. Supp. 3d at 973 (agreement containing nearly identical language). Here, there is no such express language or equivalent provision delegating the issue of whether the agreement is void or voidable to the arbitrator. *See* Franchise Agreement at 33–34. Moreover, defendants explicitly noted the lack of delegation in their motion, further demonstrating the parties have not clearly and unmistakably delegated the question of arbitrability to the arbitrator. *See* Mot. at 14 (noting "[w]here an arbitration agreement does not delegate the gateway issues of arbitrability to an arbitrator, as is the case here . . . ").

The question of arbitrability is thus properly before this court. The court next considers the two threshold issues.

**C.    A Valid Agreement to Arbitrate Exists**

As the party seeking to compel arbitration, defendants bear "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson*, 771 F.3d at 565 (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)).

Plaintiffs argue defendants have not met their burden because they offer only conclusory statements to show an arbitration agreement exists. Opp'n at 8–10. In California, the essential elements of a contract are: "1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and, 4. A sufficient cause or consideration." Cal. Civ. Code § 1550. Plaintiffs appear to dispute the second element: consent. *See* Opp'n at 9, 15. Although they do not expressly say so, plaintiffs appear to argue they did not consent to the arbitration provision because it was buried in the "57-page contract," there was no table of contents to allow Singh to quickly reference the

10

1  contents of the agreement, he was not represented by an attorney and there was no meeting of the
2  minds because the arbitration provision and franchise agreement present inconsistent and
3  contradictory terms. *See id.* at 9–10, 15–17.

4  "Mutual assent, or consent, of the parties is essential to the existence of a contract, and
5  consent is not mutual, unless the parties all agree upon the same thing in the same sense." *B.D. v.*
6  *Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 943 (2022) (citations, marks and alterations omitted).
7  "Mutual assent is determined under an objective standard applied to the outward manifestations
8  or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their
9  unexpressed intentions or understandings." *Id.* (citations and marks omitted). When there is a
10 written agreement, the parties' "mutual intention is to be determined, whenever possible, from the
11 language of the writing alone." *Roldan v. Callahan & Blaine*, 219 Cal. App. 4th 87, 93 (2013), *as*
12 *modified* (Sept. 18, 2013) (citations and marks omitted). In California, "the law effectively
13 presumes that everyone who signs a contract has read it thoroughly, whether or not that is true."
14 *Id.* The court must also presume the "parties understood the agreements they sign, and that the
15 parties intended whatever the agreement objectively provides, whether or not they subjectively
16 did[.]" *Id.* at 93.

17 Here, defendants point to the Franchise Agreement and Assignment Agreement to show
18 Singh agreed to and executed the Franchise Agreement, which included the arbitration provision
19 in dispute. *See* Mot. at 15. Plaintiffs do not dispute Singh signed the agreement. *See generally*
20 Opp'n. In fact, Singh declares he signed the agreement and plaintiffs themselves provided a copy
21 of the signed Franchise Agreement, which includes the arbitration provision as noted above. *See*
22 Singh Decl. ¶ 11; Franchise Agreement; *see also* Compl. Ex. 1. Although Singh declares he was
23 unaware of the arbitration provision, Singh Decl. ¶ 12, and argues the arbitration provision was
24 buried in the contract, *see* Opp'n at 9–10, the court presumes Singh read the contract thoroughly
25 and understood the contents of the agreement, regardless of whether he was represented by
26 counsel or not, *see Roldan*, 219 Cal. App. 4th at 93–94.

27 Defendants have met their burden of showing a valid agreement to arbitrate exists.

### D. The Arbitration Agreement Covers the Dispute

Defendants have also shown the arbitration agreement covers the parties' dispute. *See* Mot. at 16–17. The arbitration provision covers "all disputes, claims and controversies between the parties arising under or in connection with this Agreement or the making, performance or interpretation thereof . . . that have not been settled by or are not otherwise subject to mediation[.]" Franchise Agreement at 33. The arbitration provision is broad and covers plaintiffs' claims, which all arise under or are connected to the Franchise Agreement and the making of the agreement. *See generally* Compl. Plaintiffs do not dispute the arbitration agreement covers the dispute at issue. *See generally* Opp'n. At hearing, plaintiffs conceded this point.

Because there is a valid agreement to arbitrate and the agreement encompasses the dispute at issue, the court must enforce the arbitration agreement unless a ground for invalidation exists. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

### E. The Arbitration Agreement Is Unconscionable

In California, "the party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)). To establish a defense of unconscionability, "the party opposing arbitration must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." *Id.* (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015)). Both "need not be present in the same degree," meaning "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* "[T]he core concern of the unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013) (citations and marks omitted).

**1.     Plaintiffs Have Shown Minimal Procedural Unconscionability**

"Procedural unconscionability 'concerns the manner in which the contract was negotiated and the circumstances of the parties at that time.'" *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002) (quoting *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999)). Procedural unconscionability focuses on "'oppression' or 'surprise' due to unequal bargaining power." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.'" *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982) (citations omitted). "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (citations omitted).

"California courts have long recognized that franchise agreements have some characteristics of contracts of adhesion because of the 'vastly superior bargaining strength' of the franchisor." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1282 (9th Cir. 2006) (citations omitted). "An adhesion contract is indicative of procedural unconscionability because it is a standardized contract drafted by the party with greater bargaining power and offered to the weaker party on a take-it-or-leave-it basis." *Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 709 (2011) (citations omitted). "Such a contract will not be enforced if its provisions are not within the reasonable expectations of the weaker party or if they are oppressive." *Id.* However, franchise agreements are not "per se unenforceable." *Indep. Assn. of Mailbox Ctr. Owners, Inc. v. Super. Ct.*, 133 Cal. App. 4th 396, 407 (2005) (citation omitted). "Because a franchise agreement is made in a commercial context where arbitration is quite common, and reasonably to be anticipated, absent some special element of unfair advantage an arbitration provision in a franchise agreement may be enforced though the agreement is adhesive." *Chin*, 194 Cal. App. at 710 (citation and marks omitted).

Plaintiffs argue the arbitration provision is procedurally unconscionable for the following four reasons: 1) Singh had no meaningful opportunity to negotiate and had no bargaining power; 2) he did not have enough time to review the agreement; 3) the lack of table of contents made it

13

impossible for Singh to reference and understand the terms of the agreement; 4) and he had already paid the first installment of the initial franchise fee. Opp'n at 11–12.

Here, plaintiffs have shown evidence of minimal procedural unconscionability. There is evidence of oppression because the Franchise Agreement was wholly drafted by Battery Plus, which unquestionably had greater bargaining power, and the agreement was presented on a take-it-or-leave-it basis leaving Singh with no reasonable opportunity to negotiate. *See, e.g.*, *Nagrampa*, 469 F.3d at 1284; *Starace v. Lexington L. Firm*, No. 18-01596, 2019 WL 2642555, at *7 (E.D. Cal. June 27, 2019) (slight procedural unconscionability due to adhesive nature of agreement).

"[S]urprise need not be demonstrated if the court determines that the arbitration provision of an adhesive contract is oppressive." *Nagrampa*, 469 F.3d at 1284. However, the court considers surprise as a factor to determine the level of procedural unconscionability. Here, plaintiffs have shown minimal evidence of surprise. Singh received a copy of both the 2021 and 2022 FDDs well before he signed the Franchise Agreement. *See* 2021 FDD (received more than three months prior to signing Franchise Agreement); 2022 FDD (received two weeks prior to signing Franchise Agreement). Regardless of whether he actually reviewed the documents, both contained disclosures regarding the arbitration provision and attached a copy of the Franchise Agreement, which included the arbitration provisions. The FDDs in both disclosures note in bold "**Special Risks to Consider About *This* Franchise**," and highlight the out-of-state dispute resolution. 2021 FDD at v; 2022 FDD at v. Even though Singh declares he thought he needed to sign the Franchise Agreement the date it was sent to him, Singh Decl. ¶¶ 9–10, he had plenty of time to review and understand the disclosures and arbitration provision. But there is some element of surprise, in that the arbitration provision was buried in the lengthy Franchise Agreement and did not appear until page 32 of the 57-page agreement. *See id.* ¶ 12; Opp'n at 11; *see also Nagrampa*, 469 F.3d at 1283–84; *Gavigan v. Ameriprise Fin. Servs., Inc.*, No. 10-01224, 2011 WL 13267998, at *4 (C.D. Cal. Mar. 10, 2011) (finding contract exhibited element of surprise where arbitration provision appeared on "pages 37 and 38 of a 39-page agreement"); *Jaiswal v. Dickey's Barbecue Rests., Inc.*, No. 23-1921, 2024 WL 607370, at *5 (C.D. Cal.

Jan. 18, 2024) ("The Court agrees that the franchise agreements' length—over 60 single-spaced pages, with the arbitration provision tucked in the middle—weighs in favor of procedural unconscionability.").

Here, plaintiffs have shown minimal procedural unconscionability. Defendants conceded as much during hearing. Because the procedural unconscionability of the agreement is minimal, the agreement must reflect a high degree of substantive unconscionability to be unenforceable on this ground. *See Poublon*, 846 F.3d at 1263.

### 2.     Plaintiffs Have Shown Some Substantive Unconscionability

Substantive unconscionability focuses on "'overly harsh' or 'one-sided' results." *Armendariz*, 24 Cal. 4th at 114. "California law requires an arbitration agreement to have a 'modicum of bilaterality,' and arbitration provisions that are 'unfairly one-sided' are substantively unconscionable[.]" *Nagrampa*, 469 F.3d at 1281 (internal citations omitted). Plaintiffs argue the arbitration agreement is substantively unconscionable for four main reasons: 1) it gives Battery Plus access to a judicial forum while restricting plaintiffs to the arbitral forum; 2) it restricts the venue to Milwaukee, Wisconsin; 3) it unreasonably restricts the arbitrator from awarding exemplary or punitive damages; and 4) it contains an unenforceable class action/joinder waiver. Opp'n at 12–15.

The court finds plaintiffs have shown the lack of mutuality as to a judicial forum and restriction on damages are substantively unconscionable. However, the venue restriction and class action/joinder waiver are not substantively unconscionable. The court considers the substantively unconscionable provisions first.

First, the one-sided arbitral forum provision is substantively unconscionable because it lacks mutuality. "Where the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress in either an arbitral or judicial forum, California courts have found a lack of mutuality supporting substantive unconscionability." *Nagrampa*, 469 F.3d at 1285. In *Armendariz*, in determining whether an arbitration clause in an employment contract was unconscionable, the Court of Appeal found, "if an employer does have reasonable justification for the arrangement — i.e., a justification

15

1   grounded in something other than the employer's desire to maximize its advantage based on the
2   perceived superiority of the judicial forum — such an agreement would not be unconscionable."
3   24 Cal. 4th at 120.  "Without such justification, we must assume that it is."  *Id.*

4   Here, the Franchise Agreement provides "all disputes, claims and controversies between
5   the parties arising under or in connection with [the] Agreement or the making, performance or
6   interpretation thereof . . . that have not been settled by or are not otherwise subject to mediation"
7   must be resolved by arbitration.  Franchise Agreement at 33.  However, the arbitration provision
8   exempts the franchisor from this provision in the event the franchisor elects to enforce the
9   provisions of the Franchise Agreement by seeking an injunction.  *Id.*  The injunction provision
10  provides if a franchisee "breaches or threatens to breach any of the terms of this Agreement," the
11  franchisor "will be entitled to an injunction restraining such breach and/or a decree of specific
12  performance[.]"  *Id.* at 34.  Thus, while Battery Plus may seek an injunction in a judicial forum
13  for any breaches or threats of breaches to the Franchise Agreement, plaintiffs would not have the
14  same right to seek an injunction for Battery Plus's breaches in a judicial forum.

15  Defendants argue the injunctive relief carve-out is justified because a franchisee's "failure
16  to comply with certain system standards (such as misuse of registered trademarks or selling
17  inferior unapproved products) could cause irreparable harm to Batteries Plus, its other
18  franchisees, or even their consumers" and thus, "Batteries Plus must have the ability to seek
19  immediate injunctive relief to prevent irreparable harm without going through the ADR process."
20  Reply at 8.  However, the carve-out in the agreement itself is not so narrowly drawn.  Batteries
21  Plus may seek an injunction for any breach or any threat of breach of the Franchise Agreement,
22  not merely provisions that may uniquely harm Batteries Plus.  *Cf. Tompkins v. 23andMe, Inc.*,
23  840 F.3d 1016, 1031 (9th Cir. 2016) (one-sided contract to provide extra margin of safety for one
24  party based on legitimate business needs not necessarily unconscionable).

25  Moreover, defendants do not explain why Batteries Plus could not obtain similar relief in
26  an arbitral forum.  For example, defendants argue there is mutuality because the arbitration
27  provision does not prohibit Singh from seeking injunctive relief in arbitration.  Reply at 8 (citing
28  American Arbitration Association rule permitting an arbitrator to provide injunctive relief).  But

16

defendants do not explain why they must be permitted to pursue an injunction in a judicial forum while plaintiffs cannot. Here, defendants have not shown there is a reasonable justification for the injunction carve out. *See Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, No. 08-00767, 2008 WL 3876341, at *8 (E.D. Cal. Aug. 20, 2008), *aff'd and remanded*, 622 F.3d 996 (9th Cir. 2010). The lack of mutuality renders the arbitration provision substantively unconscionable. *See, e.g.*, *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107, 115 (2004) (lack of mutuality where employer retained right to seek injunctive relief in judicial forum while denying employees the same); *O'Hare v. Mun. Res. Consultants*, 107 Cal. App. 4th 267, 279 (2003) (holding similarly); *Nagrampa*, 469 F.3d at 1286 (same).

Second, the restriction against punitive or exemplary damages also is substantively unconscionable. "The principle that an arbitration agreement may not limit statutorily imposed remedies such as punitive damages and attorney fees appears to be undisputed." *Armendariz*, 24 Cal. 4th at 103. Here, the arbitration provision prohibits the arbitrator from awarding exemplary or punitive damages. Franchise Agreement at 33, 35. Defendants "do not refute" the "punitive damages waiver is substantively unconscionable under California law," Reply at 9, and conceded this point during hearing.

Although two provisions are substantively unconscionable, plaintiffs have not shown the venue restriction is unconscionable. The California Supreme Court has held "forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." *Smith, Valentino & Smith, Inc. v. Super. Ct.*, 17 Cal. 3d 491, 496 (1976). "However, if the 'place and manner' restrictions of a forum selection provision are 'unduly oppressive,' or have the effect of shielding the stronger party from liability, then the forum selection provision is unconscionable." *Nagrampa*, 469 F.3d at 1287 (internal citations omitted). To determine whether a "place and manner" restriction is reasonable, the court considers "the respective circumstances of the parties[.]" *Bolter v. Super. Ct.*, 87 Cal. App. 4th 900, 909 (2001), *as modified on denial of reh'g* (Mar. 30, 2001). "Mere inconvenience" or "additional expense" does not invalidate a forum selection clause. *Smith, Valentino & Smith, Inc.*, 17 Cal. 3d at 496.

Here, plaintiffs argue the venue restriction is "unduly burdensome" and "contrary to applicable California law." Opp'n at 13. However, plaintiffs do not explain how or why the restriction is unduly burdensome. *Contra, e.g.*, *Bolter*, 87 Cal. App. 4th at 909 (costs of travel, accommodations, hiring counsel familiar with different state's law, and closing business to litigate matter outside of California would result in significant hardship); *Nagrampa*, 469 F.3d at 1289 (same). Plaintiffs have not provided any evidence of hardship. For example, there is no affidavit explaining why arbitrating in Wisconsin would be unduly burdensome. Additionally, plaintiffs should have reasonably anticipated arbitration in a different state given the information presented to Singh before he signed. Both the 2021 and 2022 FDDs note in bold "**Special Risks to Consider About *This* Franchise**" and alert prospective franchisees to the out-of-state dispute resolution. 2021 FDD at v; 2022 FDD at v; *see also* 2021 FDD at 41 (provision "u" explaining venue restriction); 2022 FDD at 42 (same). Both the FDDs and the Franchise Agreement Singh signed contained the arbitration provision, which included the venue restriction. *See* 2021 Agreement Copy; 2022 Agreement Copy; Franchise Agreement at 33. Defendants' disclosures and the Franchise Agreement itself provide adequate notice that franchisees were agreeing to arbitrate in Wisconsin. *See, e.g.*, *Tompkins*, 840 F.3d at 1029; *cf. Bolter*, 87 Cal. App. 4th at 909 (explaining petitioner would never have anticipated litigating disputes out-of-state); *Nagrampa*, 469 F.3d at 1290 (same).

To the extent plaintiffs argue the venue restriction is unconscionable because it is contrary to applicable California law, that argument is unpersuasive. As plaintiffs note, the California Business and Professions Code provides in relevant part: "A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." Cal. Bus. & Prof. Code § 20040.5. The venue restriction is contrary to this state law provision. *See* Opp'n at 14–16. However, the FAA preempts section 20040.5. *See Bradley v. Harris Rsch., Inc.*, 275 F.3d 884, 892 (9th Cir. 2001), *abrogated in part on other grounds by Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015); *Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1081 n.6 (N.D. Cal. 2015).

18

      Finally, the class action/joinder waiver also is permissible and not unconscionable. As the Supreme Court held in *AT&T Mobility LLC v. Concepcion*, the FAA preempts California's rule rendering class action waivers unenforceable as unconscionable. 563 U.S. 333, 352 (2011); *see also Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) (unpublished) ("We have interpreted *Concepcion* as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver."). Plaintiffs conceded this point during hearing.

      For the reasons above, plaintiffs have shown the arbitration provision here includes elements that are substantively unconscionable.

### F. The Unconscionable Provisions Can be Severed

      Because the arbitration provision in the Franchise Agreement is both procedurally and substantively unconscionable, the court next considers whether the unconscionable provisions are severable. The Franchise Agreement contains a severability clause, which states, "[a]ll provisions of this Agreement are severable and this Agreement will be interpreted and enforced as if all completely invalid or unenforceable provisions were not contained herein and partially valid and enforceable provisions will be enforced to the extent valid and enforceable." Franchise Agreement at 34. California law also provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Cal. Civ. Code § 1670.5(a).

      Here, the court finds it can sever the unconscionable provisions from the Franchise Agreement. *See Armendariz*, 24 Cal. 4th at 123–24. Both parties agree, as they confirmed at hearing, that the restrictions on damages can be severed from the arbitration provision. *See* Reply at 9; Surreply at 6. The court severs the waiver of punitive damages from the Franchise Agreement and the section preventing the arbitrator from assessing punitive or exemplary

damages. *See* Franchise Agreement at 33, 35. As to the injunctive relief provision, the court finds that provision also can be severed without reforming the parties' agreement. *See id.* at 33. With only minimal procedural unconscionability and the severance of the substantively unconscionable provisions, the court finds the arbitration agreement is valid.

### G. Motion to Dismiss or Stay The Action

Defendants request the court to compel arbitration and dismiss the action, or alternatively, stay the proceedings pending arbitration. Mot. at 19–20. Section 3 of the FAA provides once a court determines an issue is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had[.]" 9 U.S.C. § 3. However, the Ninth Circuit has held "that notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014).

Plaintiffs do not address whether the court should dismiss the action in its entirety or stay the action pending arbitration. *See generally* Opp'n. Because all of plaintiffs' claims are subject to arbitration, and the court cannot discern any reason to stay the action, the court exercises its discretion to dismiss the action without prejudice. *See Villa v. Gruma Corp.*, No. 19-01721, 2020 WL 433098, at *2 (E.D. Cal. Jan. 28, 2020) (holding similarly and collecting cases).

## IV. CONCLUSION

The court **severs** the restriction on damages and the injunctive relief provision from the Franchise Agreement as noted above and otherwise **grants** the motion to compel arbitration without those severed provisions in effect. This action is **dismissed** without prejudice.

The Court of Clerk is directed to **close** this case.

This order resolves ECF No. 8.

IT IS SO ORDERED.

DATED: May 10, 2024.

CHIEF UNITED STATES DISTRICT JUDGE